# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENO FUENTES RIOS,<br><br>   Plaintiff,<br><br>   v.<br><br>WARDEN OF CSP-CORCORAN,<br><br>   Defendant. | Case No. 1:11-cv-00667-EPG<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>(ECF No. 31)<br><br>THIRTY-DAY DEADLINE TO FILE AMENDED COMPLAINT |

Reno Fuentes Rios ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to the jurisdiction of the United States Magistrate Judge in this action pursuant to 28 U.S.C. § 636(c), and no other parties have made an appearance. (ECF No. 37). Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required.

**I.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

1

that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II. SUMMARY OF PLAINTIFF'S COMPLAINT

Plaintiff lists as defendants the presiding commissioner of the Board of Parole Hearings ("Board" or "BPH"), five member commissioners of the Board, Dr. Lockerman (a forensic psychologist), a John Doe, and the Chief of the Board. Plaintiff asserts three claims: (1) retaliation and discrimination for filing complaints; (2) excessive punishment based on unchanging factors; and (3) a due process violation based on inaccurate reports.

Plaintiff has been in prison since 1989. On May 12, 1989, six Mexican nationals were arrested and charged with kidnapping. At the preliminary hearing, three were discharged and released and three were charged. Only one, Francisco Ceballos, was charged with the use of a weapon or handgun. Ceballos made statements to the police that implicated Plaintiff. On October

2

27, 1989, Plaintiff was sentenced to an imprisonment term of life with the possibility of parole for one count of kidnapping (with no enhancements) as defined by California Penal Code section 209(a). The Sacramento County Superior Court judgment did not reflect that Plaintiff used a weapon or handgun.

Since 1989, Plaintiff has attended approximately seven parole hearings. At the hearings, the panels relied on the information gathered from the probation officer's report ("POR"), which was submitted on October 27, 1989. The POR contains inaccurate information that was not found to be true by the jury in Plaintiff's criminal case and that was not subject to cross-examination.

Plaintiff alleges he had a conflict of interest with his counsel because Plaintiff requested a Marsden hearing to substitute his attorney prior to commencing the trial. As a result of this request, Plaintiff's attorney never gave Plaintiff a copy of the POR and refused to object to the POR. Thus, Plaintiff had no knowledge of the contents of the POR. At the time Plaintiff did not realize that the Board or the California Department of Corrections and Rehabilitation ("CDCR") would rely on the POR to establish the alleged commitment offense factors, or that the POR would be used when considering whether to grant Plaintiff parole.

The POR contains inaccurate information because it reflected information from the police records rather than what was found by the jury to be true. The POR erroneously states that Plaintiff used a weapon or handgun, and is also misleading in regards to Plaintiff's previous offenses. CDCR officials and Board members falsely alleged that Plaintiff used seventeen different aliases and constantly accused Plaintiff of lying because Plaintiff always denies the information reflected in the POR and in CDCR and BPH records. The POR also erroneously recommended a life sentence without the possibility of parole, and unconstitutionally imposed a $10,000 restitution fine, which is excessive and beyond the scope of Plaintiff's ability to pay, as required by California Penal Code section 1202.4.

Plaintiff attempted to correct the inaccuracies in the POR at his sentencing, in state court, in federal court, and with the Board, with negative results. At Plaintiff's first parole hearing in 1995, the district attorney who prosecuted Plaintiff indicated to the Board members that the

appellate transcript was more accurate than the POR. The presiding commissioner indicated that the transcript was garbled and that is why he did not use it.

Plaintiff asserts that as a result of the POR, his life sentence with the possibility of parole was unlawfully transformed to *de facto* life without the possibility of parole. Plaintiff alleges that Defendants desired to "sarcastically discriminate and retaliate against [P]laintiff base[d] on inaccurate unreliable commitment offense factors gathered from the probation officers recommendations." At every hearing the Board has considered the institution life prisoner evaluations submitted by prison officials and psychologists to deny Plaintiff's parole. The institution life prisoner evaluations are based on the recommendation included in the POR. Plaintiff asserts that reliance on the POR after more than twenty years of incarceration (and after Plaintiff served his base term) violates his due process rights in regard to the reliability of the commitment offense factors included in the POR.

On September 12, 2008, Defendant Lockerman was assigned to conduct an evaluation on Plaintiff before Plaintiff was scheduled to attend his upcoming parole hearing. However, at the time Plaintiff was scheduled to attend the evaluation, he was in the law library due to an upcoming deadline in a pending case. Staff refused to escort Plaintiff to be interviewed by Defendant Lockerman, alleging that Plaintiff chose to attend the law library and that they did not have time. Staff also refused to reschedule the interview. Defendant Lockerman ended up giving a prejudicial recommendation to the Board based solely on the same information from previous prejudicial reports. Plaintiff requested that the Board conduct a new psychological evaluation, or to not consider Defendant Lockerman's evaluation because it was based solely on previous evaluations, it erroneously misconstrued the crime evaluation for those that are convicted of a murder offense, and it indicated that Plaintiff's commitment offense involved drugs and alcohol.

Plaintiff asserts that his due process rights were violated by the Board when it conducted its hearings beyond the time established for non-murder offenses as defined in California Penal Code section 3041.5, when it did not allow Plaintiff to represent himself, and when it subjected Plaintiff to Marsy's Law.[1]

---

[1] See section III, *infra*, for discussion of Marsy's Law.

4

1       On October 1, 2008, Defendant Austen postponed Plaintiff's parole hearing without his
2  consent because of the reduction in hearing panels. On October 3, 2008, Defendant Austen
3  rescheduled Plaintiff's parole hearing for January 15, 2009. However, Board members were not
4  available on that date, so it was postponed again to February 10, 2009.

5       Plaintiff attended a hearing on February 10, 2009. Plaintiff alleges that he did not have
6  the assistance of counsel because the attorneys assigned by the Board to represent inmates are
7  led by CDCR and the Board, and are under contract to represent several inmates on the same
8  contract. Accordingly, the attorneys constantly refuse to object or bring the inmates' concerns to
9  the Board.

10      Plaintiff explained his conflicts with the assigned attorney to the CDCR Correctional
11 Counselor I and the BPH Classification and Parole Representative, and requested to be allowed
12 to represent himself. Plaintiff tried to address his concerns to the Board, but Defendants Arbaugh
13 and Lushbough refused to hear Plaintiff, stating that they only had two hours to conduct the
14 hearing and that they did not believe that Plaintiff could represent himself. This was
15 discrimination because Plaintiff was using an interpreter for his hearing because English is not
16 Plaintiff's first language. Defendants Arbaugh and Lushbough then postponed Plaintiff's parole
17 hearing until Plaintiff agreed to be represented by an attorney.

18      On April 28, 2009, Defendants Biggers and Smith, "in a discriminatory and retaliatory
19 manner," set Plaintiff's next parole hearing in ten years based on commitment offense factors
20 and information gathered from the POR. Prior to Marsy's Law, Plaintiff received a parole
21 hearing every two years. Defendants Maciel and Austen violated Plaintiff's due process rights by
22 subjecting him to this law.

23      At the hearing on April 28, 2009, Board members alleged that Plaintiff tried to get money
24 from his kidnapping victim's brother and that Plaintiff and his partners were armed with
25 weapons and that Plaintiff forced the victim to get into the back seat of the vehicle. None of
26 these facts were found to be true by the jury in regards to Plaintiff. The Board also erroneously
27 alleged that Plaintiff forced his victim to use drugs when nothing on the record reflected any
28 evidence of drug residue found in the residence. Plaintiff was accused of lying when he did not

accept the commitment offense factors as reflected in the POR. At a BPH hearing, the Board members also indicated to Plaintiff that he needed to be incarcerated for another seventeen years before he could pay his restitution fine.

Plaintiff has served the highest punishment of the base term established in title 15, section 2282(c) of the California Code of Regulations for kidnapping for ransom. By subjecting Plaintiff to Marsy's Law, Defendants have extended Plaintiff's sentence beyond what was established for his non-murder offense in violation of his due process rights. "Hence the court enhanced seven years to life and excessive restitution without conducting a hearing."

Plaintiff asserts that Defendants discriminated against and retaliated against Plaintiff for filing complaints by denying Plaintiff a parole hearing for ten years, based on unchanging factors (in the past it was two years in between parole hearings). Plaintiff asserts that the BPH relied on information not properly disclosed to Plaintiff in regards to his co-defendants and Plaintiff's participation in the alleged crime as reflected in the trial transcript and jury verdict. Plaintiff alleges that certain documents were altered by the BPH Classification and Parole Representatives. Plaintiff alleges that Defendants' relying on unchanging commitment offense factors and Plaintiff's prior minor offenses prevented Plaintiff from being granted parole, and prevented Plaintiff from being allowed to serve the remainder of his sentence in Mexico.

**III. BACKGROUND**

**A. Proposition 9 ("Marsy's Law")**

In 2008, California voters passed Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law." Gilman v. Schwarzenegger ("Gilman I"), 638 F.3d 1101, 1103 (9th Cir. 2011); Gilman v. Brown ("Gilman II"), 814 F.3d 1007, 1010–11 (9th Cir. 2016). The Ninth Circuit has described California's parole scheme and the modifications resulting from Marsy's Law as follows:

> Before the passage of Proposition 9, prisoners sentenced to life with the possibility of parole received an annual parole-suitability hearing by default. After denying such a prisoner parole, if the Board determined that it was not reasonable to expect that the prisoner would be granted parole within a year, the Board could schedule the prisoner's next parole hearing up to five years later for murderers and up to two years later for non-murderers.

> Following the passage of Proposition 9, after denying such a prisoner parole, the Board may schedule his next parole hearing fifteen, ten, seven, five, or three years later (the "deferral periods").
>
> Notwithstanding these deferral periods, Proposition 9 allows an inmate to request that the Board advance the date of his next parole hearing. To do so, an inmate submits a petition to advance ("PTA") setting forth "the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration of the inmate." Cal. Penal Code § 3041.5(d)(1). The Board has sole discretion to grant or deny a PTA; it may also advance an inmate's next parole hearing sua sponte. *Id.* § 3041.5(b)(4), (d)(2). If the Board denies the inmate's PTA, the inmate may not submit another PTA for three years. *Id.* § 3041.5(d)(3).

Gilman II, 814 F.3d at 1011.

### B. **Gilman** Class Action[2]

In 2005, Richard Gilman and other California inmates convicted of murders committed before November 2, 1988, filed suit against California challenging a different proposition that had been passed by voters in 1988. In 2009, the complaint was amended to allege that Marsy's Law violated the *Ex Post Facto* Clause, and Gilman moved for a preliminary injunction to bar enforcement of Marsy's Law. The district court granted the motion. On interlocutory appeal, the Ninth Circuit reversed and rejected the facial challenge to Marsy's Law. Gilman I, 638 F.3d at 1111.

Following a bench trial, the district court concluded that "the PTA process is not sufficient to protect inmates from the *ex post facto* problems inherent in Proposition 9." Gilman v. Brown, 110 F. Supp. 3d 989, 1012 (E.D. Cal. 2014). The district court ordered the Board to apply California Penal Code section 3041.5, as it existed prior to Proposition 9, to all class members. Gilman, 110 F. Supp. 3d at 1016. On appeal, the Ninth Circuit reversed, finding:

> The district court committed legal error by basing its findings principally on speculation and inference, rather than concrete evidence demonstrating that the PTA process failed to afford relief from the classwide risk of lengthened incarceration posed by Proposition 9. It erred by substituting its own judgment for the Board's regarding which PTAs ought to be granted. And the

---
[2] Pursuant to Federal Rule of Evidence 201(b), the Court may take judicial notice of the docket and specified orders in the class action of Gilman v. Brown, No. 2:05-cv-0830-MCE-CKD (E.D. Cal.).

7

> district court's findings of "structural problems" in the PTA process lack sufficient support in the record. The remaining findings, viewed under the correct legal standard, are insufficient to support a conclusion that, on this record, an as-applied Ex Post Facto Clause violation has occurred. We therefore reverse the district court's findings and injunction as to Proposition 9.

Gilman II, 814 F.3d at 1021.

**C. Procedural History**

This case was commenced on April 27, 2011, with the filing of a petition for a writ of habeas corpus, challenging denial of parole as well as Plaintiff's underlying conviction. (ECF No. 1). On June 7, 2011, the Court dismissed the petition. The Court found that: (1) the claims concerning Plaintiff's underlying conviction and sentence must be dismissed as successive; (2) the claims challenging denial of parole were not cognizable in federal habeas corpus; and (3) the *ex post facto* claim should be dismissed because it duplicated a pending class action's allegations and prayer for relief. The Court declined to issue a certificate of appealability. (ECF No. 7).

Plaintiff filed an appeal. (ECF No. 9). On August 10, 2011, the Ninth Circuit granted a certificate of appealability on the following issues: "(1) whether the California Board of Parole Hearings' implementation of Marsy's Law to defer appellant's subsequent parole suitability hearing for ten years violated the Ex Post Facto Clause; and (2) whether the delay caused by the Board's failure to timely hold appellant's seventh parole suitability hearing thereby subjecting appellant to Marsy's Law violated due process and the Ex Post Facto Clause." (ECF No. 11 at 1). On April 30, 2015, the Ninth Circuit ordered that the submission of Plaintiff's appeal was vacated pending resolution of Gilman II. (ECF No. 17).

On August 26, 2016, the Ninth Circuit vacated the judgment and remanded this matter to the district court. (ECF No. 18). The Ninth Circuit held that Plaintiff's claims did not lie at the core of habeas corpus, and thus, the district court lacked jurisdiction. However, the Ninth Circuit directed that Plaintiff should be afforded leave to amend the petition to assert claims under 42 U.S.C. § 1983. The Ninth Circuit further instructed that if Plaintiff chose to assert § 1983 claims, "the district court should determine in the first instance the impact of Gilman on his claims." (ECF No. 18 at 4).

Following remand, Plaintiff filed a complaint and this case was converted to a civil rights action under 42 U.S.C. § 1983. (ECF Nos. 31, 33). The complaint is now before the Court for screening.

## IV. EVALUATION OF PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp.,

9

637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

**A.** *Ex Post Facto*

Plaintiff challenges the application of Marsy's Law to him, because it increased the time between his parole hearings from two years to ten years. While Plaintiff appears to have brought this as a due process claim, it is more appropriately brought as a claim for a violation of the *Ex Post Facto* Clause.

"The Constitution forbids the passage of *ex post facto* laws, a category that includes '[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" Peugh v. United States, 133 S. Ct. 2072, 2078 (2013) (quoting Calder v. Bull, 3 Dall. 386, 390, 1 L. Ed. 648 (1798)). "A retroactive procedural change violates the *Ex Post Facto* Clause when it 'creates a *significant risk* of prolonging [an inmate's] incarceration.' A 'speculative' or 'attenuated' risk of prolonging incarceration is insufficient to establish a violation of the *Ex Post Facto* Clause." Gilman I, 638 F.3d at 1106 (quoting Garner v. Jones, 529 U.S. 244, 251 (2000); then quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995)).

As noted above, the Ninth Circuit instructed that if Plaintiff chose to assert § 1983 claims, this Court "should determine in the first instance the impact of Gilman on his claims." (ECF No. 18 at 4). Plaintiff cannot maintain an *ex post facto* claim challenging Marsy's Law in the instant case. The Gilman class with respect to the Proposition 9 *ex post facto* claim consisted of "all California state prisoners who have been sentenced to a life term with the possibility of parole for an offense that occurred before November 4, 2008." Gilman, 110 F. Supp. 3d at 990. Plaintiff falls within the Gilman class, and he does not allege that he opted out of the Gilman class.[3] Therefore, Plaintiff is precluded from relitigating the same *ex post facto* claim and issues that were litigated and decided in Gilman II. See Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 874 (1984) ("[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.").

Moreover, in Gilman II, the Ninth Circuit held that Marsy's Law did not violate the *Ex Post Facto* Clause. In reversing the district court, the Ninth Circuit concluded:

> The district court committed legal error by basing its findings principally on speculation and inference, rather than concrete evidence demonstrating that the PTA process failed to afford relief from the classwide risk of lengthened incarceration posed by Proposition 9. It erred by substituting its own judgment for the Board's regarding which PTAs ought to be granted. And the

---

[3] Plaintiff appears to assert that he is not part of the Gilman class, arguing that Gilman raised issues with respect to California prisoners convicted of murder offenses. (ECF No. 39 at 10). However, as noted above, the Gilman class with respect to the Proposition 9 *ex post facto* claim was not limited to prisoners convicted of murder offenses.

> district court's findings of "structural problems" in the PTA process lack sufficient support in the record. The remaining findings, viewed under the correct legal standard, are insufficient to support a conclusion that, on this record, an as-applied Ex Post Facto Clause violation has occurred.

Gilman II, 814 F.3d at 1021.

Based on the foregoing, Plaintiff's *ex post facto* claim will be dismissed without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."); Novak v. United States, 795 F.3d 1012, 1020 (9th Cir. 2015) ("Futility alone can justify a court's refusal to grant leave to amend.").

**B. Retaliation**

Prisoners have a First Amendment right to be free from retaliation for filing grievances against prison officials. Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five elements. Watison, 668 F.3d at 1114. First, the plaintiff must show that the underlying conduct is protected. Id. The filing of an inmate grievance is protected conduct, Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech and to petition the government, Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). Second, the plaintiff must show the defendant took adverse action against the plaintiff. Rhodes, 408 F.3d at 567. Third, the plaintiff must show a causal connection between the adverse action and the protected conduct. Watison, 668 F.3d at 1114. Fourth, the plaintiff must show that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568. Fifth, the plaintiff must show "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." Rizzo, 778 F.2d at 532.

Plaintiff's claim for retaliation fails against all Defendants because Plaintiff has alleged no facts that would show a causal connection between the adverse actions and Plaintiff's protected conduct. Instead, Plaintiff makes conclusory allegations that he was retaliated against

for filing appeals. This is not enough to state a cognizable claim for retaliation.

**C. Excessive Punishment**

To the extent that Plaintiff challenges his underlying sentence of life with the possibility of parole, the Court finds that the proper vehicle for relief is habeas corpus. See Nettles v. Grounds, 830 F.3d 922, 933 (9th Cir. 2016) (en banc) ("[H]abeas corpus is the exclusive remedy to attack the legality of the conviction or sentence . . . ."). The Court notes, however, that habeas corpus and prisoner civil rights actions differ in a variety of respects, such as exhaustion requirements and limitation periods. It appears that any Eighth Amendment challenge to Plaintiff's sentence would be untimely. See 28 U.S.C. § 2241(d)(1) (imposing one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus).[4]

Based on the foregoing, the Court finds that Plaintiff's Eighth Amendment claim is not cognizable in § 1983 and will be dismissed without leave to amend. See Lopez, 203 F.3d at 1127 ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."); Novak, 795 F.3d at 1020 ("Futility alone can justify a court's refusal to grant leave to amend.").

**D. Due Process**

Plaintiff alleges that his due process rights were violated when the Board conducted his parole hearing beyond the time limitations set forth in California Penal Code section 3041.5 and when the Board relied on Plaintiff's POR, which contained inaccuracies, in denying parole.

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. U.S. 1, 7 (1979). However, California law creates a state liberty interest in parole that is protected by the Due Process Clause. See Swarthout v. Cooke, 562 U.S. 216, 219–20 (2011) (per curiam). With respect to the procedures required to satisfy due process in the context of parole eligibility decisions, the Supreme Court has stated:

---

[4] Moreover, the Court notes that the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime," Graham v. Florida, 560 U.S. 48, 60 (2010), and that "successful challenges to the proportionality of particular sentences should be exceedingly rare," Ewing v. California, 538 U.S. 11, 22 (2003).

> When . . . a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures required are minimal. In *Greenholtz*, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. "The Constitution," we held, "does not require more."

Cooke, 562 U.S. at 220 (quoting Greenholtz, 442 U.S. at 16). "Because the only federal right at issue is procedural, the relevant inquiry is what process [the prisoner] received . . . ." Cooke, 562 U.S. at 222.

Whether the timing of Plaintiff's parole hearing violated California Penal Code section 3041.5 is an issue of state law. Plaintiff may not "transform a state-law issue into a federal one merely by asserting a violation of due process." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996) (citations omitted). Therefore, Plaintiff's allegation that his parole hearing violated California Penal Code section 3041.5 does not state a cognizable federal claim for violation of due process.

Plaintiff also asserts that the Board's reliance on his POR, which contained inaccuracies, in denying parole violates due process. However, Plaintiff was provided a statement of reasons why parole was denied, and Plaintiff does not allege that he did not have an opportunity to be heard at the April 28, 2009 parole hearing. The Constitution does not require more. Therefore, Plaintiff's allegation that the Board relied on inaccuracies in his POR to deny parole does not state a cognizable claim for violation of due process. See Cooke, 562 U.S. at 220–21 ("No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement.").

Plaintiff's due process claim fails against Defendants because Plaintiff has alleged no facts demonstrating that he was not allowed an opportunity to be heard or was not provided a statement of the reasons why parole was denied.

**E. Self-Representation**

Plaintiff alleges that the Board denied Plaintiff's right to represent himself at the parole hearing. A criminal defendant has a constitutional right to self-representation, Faretta v.

1  California, 422 U.S. 806, 807 (1975), but the right is "not absolute," Martinez v. Court of Appeal
2  of Cal., Fourth Appellate Dist., 528 U.S. 152, 161 (2000). The right to self-representation, as
3  recognized by Faretta, "was confined to the right to defend oneself at trial." Martinez, 528 U.S.
4  at 154. The Court is not aware of any case holding that the constitutional right to self-
5  representation extends to parole eligibility hearings. Cf. Martinez, 528 U.S. at 163 (holding
6  constitutional right to self-representation does not extend to criminal appeal); United States v.
7  Spangle, 626 F.3d 488, 494 (9th Cir. 2010) (holding right to self-representation does not extend
8  to parole revocation proceedings). See also Owens v. Curry, No. C 08-4949 RWM (PR), 2010
9  WL 539351, at *2 (N.D. Cal. Feb. 9, 2010) ("This court is unaware of any federal law or
10 constitutional right to self-representation at a parole eligibility hearing.").

Accordingly, the Court finds that Plaintiff fails to state a cognizable federal claim for violation of the right to self-representation.[5] The claim will be dismissed without leave to amend. See Lopez, 203 F.3d at 1127 ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."); Novak, 795 F.3d at 1020 ("Futility alone can justify a court's refusal to grant leave to amend.").

## V. CONCLUSION AND ORDER

The Court has screened Plaintiff's complaint and finds that it fails to state any cognizable claim upon which relief may be granted under § 1983. Although generally "leave to amend shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), a court can refuse to grant leave to amend if it determines that the deficiencies cannot be cured by the allegation of other facts, Lopez, 203 F.3d at 1127. As discussed above, the Court has found that Plaintiff's excessive punishment, self-representation, and *ex post facto* claims should be dismissed without leave to

---

[5] To the extent Plaintiff attempts to raise an equal protection claim regarding the Board requiring Plaintiff to be represented by an attorney, the Court finds that Plaintiff's allegations are not sufficient to state an equal protection claim. Plaintiff has not alleged facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702–03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601–02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

15

amend. With respect to Plaintiff's retaliation and due process claims, Plaintiff is granted leave to file an amended complaint within thirty days from the date of service of this order if he chooses to do so.

Should Plaintiff choose to amend the complaint, the amended complaint must allege constitutional violations under the law as discussed above. The amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678; Jones, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Plaintiff is reminded that Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights. Jones, 297 F.3d at 934. Plaintiff is advised that a short, concise statement of the allegations in chronological order will assist the Court in identifying his claims. Plaintiff should name each defendant and explain what happened, describing personal acts by the individual defendant that resulted in the violation of Plaintiff's rights. Plaintiff should also describe any harm he suffered as a result of the violation. Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues.

If Plaintiff decides to file an amended complaint, he is advised that an amended complaint supersedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete in itself without reference to the prior or superseded pleading. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **THIRTY (30) days** from the date of service of this order, Plaintiff may file a First Amended Complaint attempting to cure the deficiencies identified in

16

this order if he believes additional true factual allegations would state a claim for retaliation and violation of due process;

3. Should Plaintiff choose to amend the complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:11-cv-00667-EPG; and

4. If Plaintiff fails to file an amended complaint within thirty (30) days, the Court will dismiss the case for failure to state a claim and failure to comply with a Court order.

IT IS SO ORDERED.

Dated: **August 9, 2017**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE