**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENO FUENTES RIOS, <br><br> Plaintiff, <br><br> v. <br><br> WARDEN OF CSP-CORCORAN, <br><br> Defendant. | Case No. 1:11-cv-00667-EPG-PC <br><br> <u>SCREENING</u> <br><br> FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS CONSISTENT WITH MAGISTRATE JUDGE'S PRIOR ORDER IN LIGHT OF <u>WILLIAMS</u> DECISION <br><br> FINDINGS AND RECOMMENDATION TO DISMISS AMENDED COMPLAINT WITHOUT LEAVE TO AMEND <br><br> (ECF Nos. 42, 45) |

Reno Fuentes Rios ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.

The Court previously screened Plaintiff's complaint (ECF No. 31) and found that it failed to state any cognizable claim upon which relief may be granted under § 1983. (ECF No. 42). The Court granted Plaintiff leave to amend his retaliation and due process claims. The Court dismissed Plaintiff's excessive punishment, self-representation, and *ex post facto* claims with prejudice.

As described below, in light of Ninth Circuit authority, the undersigned is recommending that the assigned District Judge dismiss claims consistent with the order issued by the Magistrate Judge at the screening stage. Further, the undersigned is recommending that the amended complaint (ECF No. 45) be dismissed without leave to amend.

## I. WILLIAMS V. KING

On November 9, 2017, the United States Court of Appeals for the Ninth Circuit held that a magistrate judge lacked jurisdiction to dismiss a prisoner's case for failure to state a claim at the screening stage where the Plaintiff had consented to magistrate judge jurisdiction and defendants had not yet been served. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Specifically, the Ninth Circuit held that "28 U.S.C. § 636(c)(1) requires the consent of all plaintiffs and defendants named in the complaint—irrespective of service of process—before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Id. at 501.

Here, Defendants were not served at the time the Court issued its order dismissing claims, and therefore had not appeared or consented to magistrate judge jurisdiction. Accordingly, the Magistrate Judge lacked jurisdiction to dismiss claims based solely on Plaintiff's consent. In light of the holding in Williams, the undersigned will recommend to the assigned District Judge that he dismiss the claims previously dismissed by the Magistrate Judge, for the reasons provided in the Court's screening order (ECF No. 42).

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

**III. SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff lists as Defendants: Governor Edmund G. Brown; the Chief of the Board of Parole Hearings ("Board" or "BPH"); multiple commissioners of the Board (collectively "BPH Defendants"), including Archie "Joe" Biggers, Arthur C. Smith, Troy Arbaugh, Diane Lushbough, Sandra Maciel, Linnette Austen, and Mattis Kristina; Dr. Aron B. Lockerman (a forensic psychologist); and Doe Defendants from the BPH, the Classification and Parole Representative ("CPR"), and the Board of Prison Terms ("BPT"). In the amended complaint, Plaintiff asserts due process and retaliation claims.

On or about May 12, 1989, six Mexican nationals, including Plaintiff, were arrested for the kidnapping of Carlos Enrique Ramos Soto. Three individuals were dismissed and released; the other three individuals, including Plaintiff, were charged. On October 27, 1989, Plaintiff was sentenced in the Sacramento County Superior Court to a term of life with the possibility of parole for one count of kidnapping as defined by California Penal Code section 209(a). The Sacramento County Superior Court abstract of judgment did not reflect any enhancement or the use of a handgun, firearm, or weapon.

On or about November 2, 1989, Plaintiff was transferred from Sacramento County to the California Department of Corrections and Rehabilitation ("CDCR"). Upon Plaintiff's arrival, CPR and BPT Doe Defendants considered the probation officer's report ("POR"), which

contains inaccurate and inconsistent information in regards to the commitment offense based on police records, statements of codefendants, and other evidence that was not found to be true by the jury at Plaintiff's trial.

Plaintiff alleges he had a conflict of interest with his counsel because Plaintiff requested a Marsden hearing to substitute his attorney prior to commencement of trial. As a result of this request, Plaintiff's attorney never gave Plaintiff a copy of the POR and refused to object to the POR. Thus, Plaintiff had no knowledge of the contents of the POR.

Plaintiff alleges that from June 2004 through April 28, 2009, he has been subjected to retaliation by CPR and BPH Doe Defendants because Plaintiff refused to admit or show remorse or insight regarding the allegations set forth in the POR. Plaintiff asserts that BPH Defendants and Defendant Aron B. Lockerman were involved in concert with Doe Defendants to retaliate against Plaintiff because he did not want to admit the POR factors and because he challenged the inaccuracies and inconsistencies in the POR. Plaintiff asserts that as a result of the POR, his life sentence with the possibility of parole has been unlawfully transformed to *de facto* life without the possibility of parole.

On or about September 12, 2008, Defendant Lockerman was assigned to conduct a psychological evaluation for Plaintiff's upcoming parole hearing. Plaintiff was at the law library, but Defendant Lockerman refused to reschedule the evaluation. Plaintiff alleges that as a result, Defendant Lockerman generated a prejudicial retaliatory evaluation based on the POR recommendation, previous psychologist evaluations, and Plaintiff's prison file, so that Plaintiff would be denied the possibility of parole.

On or about October 1, 2008, Plaintiff was scheduled to attend his seventh BPH hearing. The BPH *sua sponte* postponed the hearing due to budgetary restraints and the unavailability of sufficient BPH panel members to conduct hearings. Plaintiff alleges that Defendants Sandra Maciel, Linnette Austen, and Mattis Kristina postponed his hearing in a retaliatory manner and subjected Plaintiff to Marsy's Law.[1]

---

[1] See section IV, *infra*, for discussion of Marsy's Law.

On February 10, 2009, Plaintiff was again scheduled to attend his seventh BPH hearing. The BPH did not allow Plaintiff to represent himself and postponed the hearing until Plaintiff could be assigned an attorney. Plaintiff alleges that Defendants Troy Arbaugh and Diane Lushbough postponed the hearing because Plaintiff addressed his concerns regarding the POR's inaccurate commitment offense factors.

On April 28, 2009, Defendants Archie "Joe" Biggers and Arthur C. Smith denied Plaintiff parole for ten years after Plaintiff had served twenty years for a non-murder offense. Plaintiff alleges that they arbitrarily abused their discretion with retaliatory motive based on Plaintiff's attempt to correct the POR's prejudicial commitment offense factors that were not found to be true by the jury. Plaintiff alleges that Defendants failed to demonstrate any legitimate penological justification for relying on the same unchanging factors.

Plaintiff alleges that BPH Defendants denied him due process when they unlawfully enhanced Plaintiff's sentence seven years based on the POR, which notes the use of a handgun or weapon in the commitment offense of kidnapping for ransom. However, firearm use was not reflected in the abstract of judgment or found to be true by the jury at trial.

Plaintiff also alleges that BPH Defendants, Doe Defendants, and Defendant Lockerman violated Plaintiff's due process rights when they have recommended denial of parole based on the POR's conjectures that Plaintiff was convicted or sentenced for kidnapping for ransom with the use of handgun or weapon.

Plaintiff further alleges that BPH Defendants and Doe Defendants violated Plaintiff's due process rights when they delayed Plaintiff's BPH hearings beyond the two years established by prior California statute and unreasonably subjected Plaintiff to Marsy's Law in an arbitrary manner.

Finally, Plaintiff alleges that from 1994 through 2008, he has been denied participation in the Foreign Prisoner Transfer Treaty Program, which would allow Plaintiff to serve the remainder of his sentence in his home country of Mexico. Plaintiff alleges that Defendant Edmund G. Brown and BPH Defendants violated due process by refusing to establish Plaintiff's release date and by failing to promulgate reasonable rules, policies, regulations that allow foreign

Mexican nationals serving a life sentence with the possibility of parole to serve the remainder of their sentences in their home country without discrimination based on their life sentence.

## IV. BACKGROUND

### A. Proposition 9 ("Marsy's Law")

In 2008, California voters passed Proposition 9, the "Victims' Bill of Rights Act of 2008: Marsy's Law." Gilman v. Schwarzenegger ("Gilman I"), 638 F.3d 1101, 1103 (9th Cir. 2011); Gilman v. Brown ("Gilman II"), 814 F.3d 1007, 1010–11 (9th Cir. 2016). The Ninth Circuit has described California's parole scheme and the modifications resulting from Marsy's Law as follows:

> Before the passage of Proposition 9, prisoners sentenced to life with the possibility of parole received an annual parole-suitability hearing by default. After denying such a prisoner parole, if the Board determined that it was not reasonable to expect that the prisoner would be granted parole within a year, the Board could schedule the prisoner's next parole hearing up to five years later for murderers and up to two years later for non-murderers. Following the passage of Proposition 9, after denying such a prisoner parole, the Board may schedule his next parole hearing fifteen, ten, seven, five, or three years later (the "deferral periods").
>
> Notwithstanding these deferral periods, Proposition 9 allows an inmate to request that the Board advance the date of his next parole hearing. To do so, an inmate submits a petition to advance ("PTA") setting forth "the change in circumstances or new information that establishes a reasonable likelihood that consideration of the public safety does not require the additional period of incarceration of the inmate." Cal. Penal Code § 3041.5(d)(1). The Board has sole discretion to grant or deny a PTA; it may also advance an inmate's next parole hearing sua sponte. Id. § 3041.5(b)(4), (d)(2). If the Board denies the inmate's PTA, the inmate may not submit another PTA for three years. Id. § 3041.5(d)(3).

Gilman II, 814 F.3d at 1011.

### B. Gilman Class Action[2]

In 2005, Richard Gilman and other California inmates convicted of murders committed before November 2, 1988, filed suit against California challenging a different proposition that had been passed by voters in 1988. In 2009, the complaint was amended to allege that Marsy's

---
[2] Pursuant to Federal Rule of Evidence 201(b), the Court may take judicial notice of the docket and specified orders in the class action of Gilman v. Brown, No. 2:05-cv-0830-MCE-CKD (E.D. Cal.).

Law violated the *Ex Post Facto* Clause, and Gilman moved for a preliminary injunction to bar enforcement of Marsy's Law. The district court granted the motion. On interlocutory appeal, the Ninth Circuit reversed and rejected the facial challenge to Marsy's Law. Gilman I, 638 F.3d at 1111.

Following a bench trial, the district court concluded that "the PTA process is not sufficient to protect inmates from the *ex post facto* problems inherent in Proposition 9." Gilman v. Brown, 110 F. Supp. 3d 989, 1012 (E.D. Cal. 2014). The district court ordered the Board to apply California Penal Code section 3041.5, as it existed prior to Proposition 9, to all class members. Gilman, 110 F. Supp. 3d at 1016. On appeal, the Ninth Circuit reversed, finding:

> The district court committed legal error by basing its findings principally on speculation and inference, rather than concrete evidence demonstrating that the PTA process failed to afford relief from the classwide risk of lengthened incarceration posed by Proposition 9. It erred by substituting its own judgment for the Board's regarding which PTAs ought to be granted. And the district court's findings of "structural problems" in the PTA process lack sufficient support in the record. The remaining findings, viewed under the correct legal standard, are insufficient to support a conclusion that, on this record, an as-applied Ex Post Facto Clause violation has occurred. We therefore reverse the district court's findings and injunction as to Proposition 9.

Gilman II, 814 F.3d at 1021.

**C. Procedural History**

This case was commenced on April 27, 2011, with the filing of a petition for a writ of habeas corpus, challenging denial of parole as well as Plaintiff's underlying conviction. (ECF No. 1). On June 7, 2011, the Court dismissed the petition. The Court found that: (1) the claims concerning Plaintiff's underlying conviction and sentence must be dismissed as successive; (2) the claims challenging denial of parole were not cognizable in federal habeas corpus; and (3) the *ex post facto* claim should be dismissed because it duplicated a pending class action's allegations and prayer for relief. The Court declined to issue a certificate of appealability. (ECF No. 7).

Plaintiff filed an appeal. (ECF No. 9). On August 10, 2011, the Ninth Circuit granted a certificate of appealability on the following issues: "(1) whether the California Board of Parole Hearings' implementation of Marsy's Law to defer appellant's subsequent parole suitability

hearing for ten years violated the Ex Post Facto Clause; and (2) whether the delay caused by the Board's failure to timely hold appellant's seventh parole suitability hearing thereby subjecting appellant to Marsy's Law violated due process and the Ex Post Facto Clause." (ECF No. 11 at 1). On April 30, 2015, the Ninth Circuit ordered that the submission of Plaintiff's appeal was vacated pending resolution of Gilman II. (ECF No. 17).

On August 26, 2016, the Ninth Circuit vacated the judgment and remanded this matter to the district court. (ECF No. 18). The Ninth Circuit held that Plaintiff's claims did not lie at the core of habeas corpus, and thus, the district court lacked jurisdiction. However, the Ninth Circuit directed that Plaintiff should be afforded leave to amend the petition to assert claims under 42 U.S.C. § 1983. The Ninth Circuit further instructed that if Plaintiff chose to assert § 1983 claims, "the district court should determine in the first instance the impact of Gilman on his claims." (ECF No. 18 at 4).

Following remand, Plaintiff filed a complaint and this case was converted to a civil rights action under 42 U.S.C. § 1983. (ECF Nos. 31, 33). The Court previously screened Plaintiff's complaint and found that it failed to state any cognizable claim upon which relief may be granted under § 1983. The Court granted Plaintiff leave to amend his retaliation and due process claims. The Court dismissed Plaintiff's excessive punishment, self-representation, and *ex post facto* claims with prejudice. (ECF No. 42).

On October 16, 2017, Plaintiff filed an amended complaint (ECF No. 45), which is now before the Court for screening.

**V.     LEGAL STANDARD**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490

8

U.S. 386, 393–94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)); <u>see also</u> <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 618 (1979); <u>Hall v. City of Los Angeles</u>, 697 F.3d 1059, 1068 (9th Cir. 2012); <u>Crowley v. Nevada</u>, 678 F.3d 730, 734 (9th Cir. 2012); <u>Anderson v. Warner</u>, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. <u>Long v. Cty. of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>see also</u> <u>Marsh v. Cty. of San Diego</u>, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" <u>Preschooler II v. Clark Cty. Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." <u>Preschooler II</u>, 479 F.3d at 1183 (quoting <u>Johnson</u>, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

Under § 1983, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. <u>Iqbal</u>, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v.</u>

1  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim
2  for relief under § 1983 based on a theory of supervisory liability, Plaintiff must allege some facts
3  that would support a claim that the supervisory defendants either: personally participated in the
4  alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent
5  them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation
6  of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v.
7  Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d
8  1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action
9  or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the
10 constitutional deprivations of which the complaint is made," or "conduct that showed a reckless
11 or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646
12 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

### VI. EVALUATION OF PLAINTIFF'S CLAIMS IN INITIAL COMPLAINT THAT WERE PREVIOUSLY DISMISSED WITH PREJUDICE BY MAGISTRATE JUDGE

#### A. *Ex Post Facto*

In the initial complaint and the amended complaint, Plaintiff challenges the application of Marsy's Law to him, because it increased the time between his parole hearings from two years to ten years. "The Constitution forbids the passage of *ex post facto* laws, a category that includes '[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" Peugh v. United States, 569 U.S. 530, 532–33 (2013) (quoting Calder v. Bull, 3 Dall. 386, 390, 1 L. Ed. 648 (1798)). "A retroactive procedural change violates the *Ex Post Facto* Clause when it 'creates a *significant risk* of prolonging [an inmate's] incarceration.' A 'speculative' or 'attenuated' risk of prolonging incarceration is insufficient to establish a violation of the *Ex Post Facto* Clause." Gilman I, 638 F.3d at 1106 (quoting Garner v. Jones, 529 U.S. 244, 251 (2000); then quoting Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 509 (1995)).

As noted above, the Ninth Circuit instructed that if Plaintiff chose to assert § 1983 claims, this Court "should determine in the first instance the impact of Gilman on his claims."

(ECF No. 18 at 4). Plaintiff cannot maintain an *ex post facto* claim challenging Marsy's Law in the instant case. The Gilman class with respect to the Proposition 9 *ex post facto* claim consisted of "all California state prisoners who have been sentenced to a life term with the possibility of parole for an offense that occurred before November 4, 2008." Gilman, 110 F. Supp. 3d at 990. Plaintiff falls within the Gilman class, and he does not allege that he opted out of the Gilman class.³ Therefore, Plaintiff is precluded from relitigating the same *ex post facto* claim and issues that were litigated and decided in Gilman II. See Cooper v. Fed. Reserve Bank of Richmond, 467 U.S. 867, 874 (1984) ("[U]nder elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation.").

Moreover, in Gilman II, the Ninth Circuit held that Marsy's Law did not violate the *Ex Post Facto* Clause. In reversing the district court, the Ninth Circuit concluded:

> The district court committed legal error by basing its findings principally on speculation and inference, rather than concrete evidence demonstrating that the PTA process failed to afford relief from the classwide risk of lengthened incarceration posed by Proposition 9. It erred by substituting its own judgment for the Board's regarding which PTAs ought to be granted. And the district court's findings of "structural problems" in the PTA process lack sufficient support in the record. The remaining findings, viewed under the correct legal standard, are insufficient to support a conclusion that, on this record, an as-applied Ex Post Facto Clause violation has occurred.

Gilman II, 814 F.3d at 1021.

Based on the foregoing, Plaintiff's *ex post facto* claim should be dismissed without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."); Novak v. United States, 795 F.3d 1012, 1020 (9th Cir. 2015) ("Futility alone can justify a court's refusal to grant leave to amend.").

**B. Excessive Punishment**

To the extent that Plaintiff challenges his underlying sentence of life with the possibility

---

³ Plaintiff appears to assert that he is not part of the Gilman class, arguing that Gilman raised issues with respect to California prisoners convicted of murder offenses. (ECF No. 39 at 10). However, as noted above, the Gilman class with respect to the Proposition 9 *ex post facto* claim was not limited to prisoners convicted of murder offenses.

of parole, the Court finds that it does not have jurisdiction over Plaintiff's Eighth Amendment claim. See Nettles v. Grounds, 830 F.3d 922, 933 (9th Cir. 2016) (en banc) ("[H]abeas corpus is the exclusive remedy to attack the legality of the conviction or sentence . . . ."). This claim was raised in Petitioner's habeas petition, (ECF No. 1), and was dismissed by Magistrate Judge Austin as successive, (ECF No. 7 at 1–2). Judge Austin's determination that challenges to Petitioner's underlying conviction and sentence had been presented in prior petitions to the Court, and thus were successive, was untouched by the Ninth Circuit on appeal. (ECF Nos. 11, 18). The Court notes that Petitioner previously has sought federal habeas relief with respect to his underlying conviction and sentence multiple times in this Court. See, e.g., Rios v. Warden, No. 2:04-cv-00017-MCE-PAN (dismissed as untimely); Rios v. Warden, No. 2:05-cv-01525-MCE-PAN (dismissed as successive); Rios v. Warden, No. 2:09-cv-01285-JAM-KJM (dismissed as successive).[4]

Based on the foregoing, the Court finds that Plaintiff's Eighth Amendment claim is not cognizable in § 1983 and should be dismissed without leave to amend. See Lopez, 203 F.3d at 1127 ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."); Novak, 795 F.3d at 1020 ("Futility alone can justify a court's refusal to grant leave to amend.").

**C. Self-Representation**

Plaintiff alleges that the Board denied Plaintiff's right to represent himself at the parole hearing. A criminal defendant has a constitutional right to self-representation, Faretta v. California, 422 U.S. 806, 807 (1975), but the right is "not absolute," Martinez v. Court of Appeal of Cal., Fourth Appellate Dist., 528 U.S. 152, 161 (2000). The right to self-representation, as recognized by Faretta, "was confined to the right to defend oneself at trial." Martinez, 528 U.S. at 154. The Court is not aware of any case holding that the constitutional right to self-representation extends to parole eligibility hearings. Cf. Martinez, 528 U.S. at 163 (holding

---

[4] The Court may take judicial notice of its own records in other cases. United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

12

constitutional right to self-representation does not extend to criminal appeal); United States v. Spangle, 626 F.3d 488, 494 (9th Cir. 2010) (holding right to self-representation does not extend to parole revocation proceedings). See also Owens v. Curry, No. C 08-4949 RWM (PR), 2010 WL 539351, at *2 (N.D. Cal. Feb. 9, 2010) ("This court is unaware of any federal law or constitutional right to self-representation at a parole eligibility hearing.").

Accordingly, the Court finds that Plaintiff fails to state a cognizable federal claim for violation of the right to self-representation.[5] The claim should be dismissed without leave to amend. See Lopez, 203 F.3d at 1127 ("[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."); Novak, 795 F.3d at 1020 ("Futility alone can justify a court's refusal to grant leave to amend.").

## VII. EVALUATION OF PLAINTIFF'S CLAIMS IN AMENDED COMPLAINT

### A. Due Process

Plaintiff asserts that Defendants' reliance on his POR, which contained inaccuracies, in denying parole (and thereby enhancing his sentence) violates due process. "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. U.S. 1, 7 (1979). However, California law creates a state liberty interest in parole that is protected by the Due Process Clause. See Swarthout v. Cooke, 562 U.S. 216, 219–20 (2011) (per curiam). With respect to the procedures required to satisfy due process in the context of parole eligibility decisions, the Supreme Court has stated:

> When . . . a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication—and federal courts will review the application of those constitutionally required

---

[5] To the extent Plaintiff attempts to raise an equal protection claim regarding the Board requiring Plaintiff to be represented by an attorney, the Court finds that Plaintiff's allegations are not sufficient to state an equal protection claim. Plaintiff has not alleged facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702–03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071,1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose, Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 601–02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

> procedures. In the context of parole, we have held that the procedures required are minimal. In *Greenholtz*, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied. "The Constitution," we held, "does not require more."

Cooke, 562 U.S. at 220 (quoting Greenholtz, 442 U.S. at 16). "Because the only federal right at issue is procedural, the relevant inquiry is what process [the prisoner] received . . . ." Id. at 222.

Plaintiff's allegations are insufficient to state a claim for a due process violation. Even taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, the amended complaint fails to allege that Plaintiff did not have an opportunity to be heard at the April 28, 2009 parole hearing or that he was not provided a statement of reasons why parole was denied. The Constitution does not require more. Therefore, Plaintiff's allegation that the Board relied on inaccuracies in his POR to deny parole does not state a cognizable claim for violation of due process. See Cooke, 562 U.S. at 220–21 ("No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement."). The Court previously provided Plaintiff with the legal standard for due process claims and gave him an opportunity to amend his complaint in order to state a cognizable claim for a due process violation. The undersigned finds that Plaintiff is not entitled to additional leave to amend his complaint and recommends that the due process claim be dismissed without leave to amend.

**B. Retaliation**

Plaintiff alleges that Defendant Lockerman generated a retaliatory prejudicial psychological evaluation (based on the POR recommendation, previous psychologist evaluations, and Plaintiff's prison file) so that Plaintiff would be denied parole after Plaintiff was at the law library during the time of a scheduled psychological evaluation and Defendant Lockerman refused to reschedule said evaluation. Plaintiff also alleges that Defendants Sandra Maciel, Linnette Austen, and Mattis Kristina postponed his seventh BPH hearing in a retaliatory manner and subjected Plaintiff to Marsy's Law. Plaintiff alleges that Defendants Troy Arbaugh and Diane Lushbough postponed Plaintiff's seventh BPH hearing because Plaintiff addressed his concerns regarding the POR's inaccurate commitment offense factors. Plaintiff alleges that

Defendants Archie "Joe" Biggers and Arthur C. Smith denied Plaintiff parole for ten years, arbitrarily abusing their discretion with retaliatory motive based on Plaintiff trying to correct the POR's prejudicial commitment offense factors that were not found to be true by the jury.

Prisoners have a First Amendment right to be free from retaliation. Watison v. Carter, 668 F.3d 1108, 1114–15 (9th Cir. 2012); Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009). A retaliation claim has five elements. Watison, 668 F.3d at 1114. First, the plaintiff must show that the underlying conduct is protected. Id. The filing of an inmate grievance is protected conduct, Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech and to petition the government, Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). Second, the plaintiff must show the defendant took adverse action against the plaintiff. Rhodes, 408 F.3d at 567. Third, the plaintiff must show a causal connection between the adverse action and the protected conduct. Watison, 668 F.3d at 1114. Fourth, the plaintiff must show that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Rhodes, 408 F.3d at 568. Fifth, the plaintiff must show "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution . . . ." Rizzo, 778 F.2d at 532.

Plaintiff's allegations are insufficient to state a claim for retaliation. Even taking Plaintiff's allegations as true and liberally construing them in Plaintiff's favor, the amended complaint does not allege facts sufficient to show: (1) a causal connection between the adverse actions and any protected conduct; and (2) that the retaliatory actions did not advance legitimate goals of the correctional institution. Plaintiff makes conclusory allegations that he was retaliated against for challenging the inaccuracies and inconsistencies in the POR. However, under California law, the parole board must consider all relevant reliable information in determining suitability for parole and has the authority to deny parole on the basis of any grounds presently available to it. See Nettles, 830 F.3d at 935. Plaintiff does not show why it was improper for Defendant Lockerman to base his evaluation on the POR, previous psychologist evaluations, and Plaintiff's prison file. Additionally, the amended complaint states that Plaintiff's BPH hearings

15

were postponed due to, *inter alia*, budgetary restraints, the unavailability of sufficient BPH panel members to conduct hearings, and the need for Plaintiff to be assigned an attorney, which are reasons that advance legitimate goals of the correctional institution and are not retaliatory.

Accordingly, the Court finds that Plaintiff fails to state a cognizable claim for retaliation. The Court previously provided Plaintiff with the legal standard for retaliation and gave him an opportunity to amend his complaint in order to state a cognizable claim for retaliation. The undersigned finds that Plaintiff is not entitled to additional leave to amend his complaint and recommends that the retaliation claim be dismissed without leave to amend.

**C. Foreign Prisoners Transfer Treaty Program**

Plaintiff alleges that he has been denied participation in the Foreign Prisoners Transfer Treaty Program. Plaintiff alleges that Defendant Brown and BPH Defendants violated due process by refusing to establish Plaintiff's release date and by failing to promulgate reasonable rules and policies that would allow Mexican nationals serving a life sentence with the possibility of parole to serve the remainder of their sentences in their home country without discrimination based on their life sentences.

In California, the "Chairman of the Board of Prison Terms . . . has been given the authority to approve or disapprove foreign prisoner transfers under the Convention on the Transfer of Sentenced Persons . . . . Any prisoner wishing to transfer to his/her country of citizenship must submit a written request to the Chairman." Cal. Code Regs. tit. 15, § 2870. Additionally, "[a]s part of the request for transfer, the prisoner must request that the receiving nation submit a letter directly to the Chairman stating an intention to accept the transferred prisoner and indicating the receiving nation's intentions regarding the incarceration of the prisoner." tit. 15, § 2870(a).

Plaintiff may not proceed in this action on a myriad of unrelated claims against different defendants in a single action. Fed. R. Civ. P. 18(a).

> The controlling principle appears in Fed. R. Civ. P. 18(a): "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Thus multiple claims

16

> against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g).

K'napp v. Cal. Dep't of Corr., 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29, 2013) (alteration in original) (quoting George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)), aff'd, 599 F. App'x 791 (9th Cir. 2015). Additionally, Rule 20 states in pertinent part: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

The denial of a transfer request to serve the remainder of Plaintiff's sentence in his home country are new allegations unrelated to the claims previously raised in this case. Plaintiff did not include any allegations regarding denial of a transfer request in his habeas petition that commenced this case. (ECF No. 1). In the initial section 1983 complaint that followed, Plaintiff made a passing reference "that defendants actions by relying on unchanging factors prevented to parole or allowed to served his remain of sentence in Mexico" and requested the Court "to order defendants to process plaintiff application of the Foreign Prisoner Transfer Treaty Program" without any discussion. (ECF No. 31 at 6, 24). The Foreign Prisoner Transfer Treaty Program claims do not appear to be connected to Plaintiff's due process and retaliation claims regarding his seventh BPH hearing raised in the amended complaint or the *ex post facto*, excessive punishment, and self-representation claims raised in the initial complaint.

The amended complaint fails to comply with the above authorities and principles, and the Court has recommended that all of Plaintiff's other claims be dismissed without leave to amend. Accordingly, the Court finds it appropriate to recommend dismissal of Plaintiff's amended complaint without leave to amend and without prejudice to refiling his claims regarding the

Foreign Prisoners Transfer Treaty Program in a separate § 1983 action.[6]

## VIII. CONCLUSION AND RECOMMENDATION

The Court has screened Plaintiff's amended complaint and finds that it fails to state cognizable claims upon which relief may be granted under § 1983. Although generally "leave to amend shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), a court can refuse to grant leave to amend if it determines that the deficiencies cannot be cured by the allegation of other facts, Lopez, 203 F.3d at 1127. As discussed above and in the previous screening order, the Court has found that Plaintiff's excessive punishment, self-representation, and *ex post facto* claims raised in the original complaint should be dismissed without leave to amend. With respect to Plaintiff's retaliation and due process claims regarding denial of parole raised in the amended complaint, the Court finds that these claims also should be dismissed without leave to amend. As for the claims regarding the Foreign Prisoners Transfer Treaty Program, the Court finds that these claims should be dismissed without prejudice to refiling them in a separate § 1983 action.

Based on the foregoing, it is HEREBY RECOMMENDED that the amended complaint (ECF No. 45) be DISMISSED without leave to amend and without prejudice to refiling Plaintiff's claims regarding the Foreign Prisoners Transfer Treaty Program in a separate § 1983 action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty-one (21) days** after being served with these findings and recommendations, Plaintiff may file written objections with the Court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\
\\\
\\\
\\\

---

[6] The Court expresses no opinion as to the merits of Plaintiff's claims regarding the Foreign Prisoners Transfer Treaty Program or whether any procedural requirements are satisfied.

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 31, 2018**  /s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE